OFFICE COPY

JUDGE COTE

05 CV 4926

PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036
(212) 858-1000
Leo T. Crowley (LC-1311)
Daniel Z. Mollin (DM-8500)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| THE BANK OF NEW YORK,<br><br>      Interpleader Plaintiff,<br><br>      v.<br><br>JENNY RUBIN, DEBORAH RUBIN, DANIEL MILLER, ABRAHAM MENDELSON, STUART E. HERSCH, RENAY FRYM, NOAM ROZENMAN, ELENA ROZENMAN, TZVI ROZENMAN;<br><br>BANK MELLI IRAN NEW YORK REPRESENTATIVE OFFICE;<br><br>BANK SADERAT IRAN NEW YORK REPRESENTATIVE OFFICE;<br><br>BANK SADERAT IRAN DUBAI BRANCH<br><br>BANK SEPAH IRAN NEW YORK REPRESENTATIVE OFFICE; and<br><br>ARAB BANK FOR INVESTMENT AND FOREIGN TRADE;<br><br>      Interpleader Defendants. | **INTERPLEADER COMPLAINT**<br><br>Docket No:_____ |

Interpleader Plaintiff The Bank of New York ("BNY"), by its undersigned counsel, alleges as follows:

300173845v1

## NATURE OF THE ACTION

1.  BNY files this Interpleader Complaint (the "Interpleader") as a neutral stakeholder of several funds potentially subject to a writ of execution (the "Execution") served upon BNY by the United States Marshal for the Southern District of New York (the "Marshal") in aid of a judgment obtained in the United States District Court for the District of Columbia in the case *Rubin, et al. v. The Islamic Republic of Iran, et. al.* (No. 1:01-CV-01655-RMU) (hereinafter "*Rubin*"). The *Rubin* plaintiffs claim to be victims of Iranian government sponsored terrorism, and the named *Rubin* defendants consist of the country Iran, an Iranian governmental entity, and Iranian government officials (collectively, "Iran"). The Execution levies upon all assets BNY may hold in which any of the *Rubin* defendants, or any agency or instrumentality thereof, have an interest.

2.  This Interpleader is necessary because BNY does not hold any assets of the *Rubin* defendants, but does hold assets which may or may not be considered assets of agencies or instrumentalities of Iran that are subject to execution under § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"). Four other parties have asserted, or may assert, claims to the assets, each of which claims would be adverse to those of the *Rubin* plaintiffs. BNY, accordingly, is exposed to multiple liability with respect to its disposition of the assets absent Court resolution of the competing claims and desires to extricate itself from the dispute by depositing the assets into the Court registry via this Interpleader.

## THE PARTIES

3.  BNY is a New York State chartered banking institution with its principal place of business in New York, New York.

300173845v1

4. Jenny Rubin, Deborah Rubin, Daniel Miller, Abraham Mendelson, Stuart E. Hersch, Renay Frym, Noam Rozenman, Elena Rozenman, and Tzvi Rozenman are the *Rubin* plaintiffs. On information and belief, Jenny Rubin, Deborah Rubin and Abraham Mendelson are residents of Los Angeles, California; Daniel Miller is a resident of Boca Raton, Florida, and Stuart E. Hersch, Renay Frym, Noam Rozenman, Elena Rozenman, and Tzvi Rozenman are residents of Israel.

5. Bank Melli Iran New York Representative Office ("Bank Melli") is an Iranian state-owned bank which maintains funds in a deposit account at BNY.

6. Bank Sepah Iran New York Representative Office ("Bank Sepah") is an Iranian state-owned bank which maintains funds in a deposit account at BNY.

7. Bank Saderat Iran New York Representative Office ("Bank Saderat") is an Iranian state-owned bank which maintains funds in a deposit account at BNY.

8. Bank Saderat Iran Dubai Branch ("Bank Saderat-Dubai") is an Iranian state-owned bank based in Dubai, United Arab Emirates, which may have an interest in the proceeds of wire transfer held at BNY.

9. Arab Bank For Investment And Foreign Trade ("ARBIFT") is a foreign bank, based in Abu Dhabi, United Arab Emirates, which may have an interest in the proceeds of a wire transfer held at BNY.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and, in the alternative, 28 U.S.C § 1332.

11. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

### Accounts at BNY of Bank Melli, Bank Saderat, and Bank Sepah (the "Iranian Banks")

12. The Iranian Banks all have maintained deposit accounts at BNY for several years. As of May 20, 2005, Bank Melli's balance was $149,632.07, Bank Saderat's balance was $5,389.34, and Bank Sepah's balance was $17,487.53.

13. In late 2002, a separate group of terrorism victims (the "*Weinstein* plaintiffs") sought to have the New York City sheriff levy on the Iranian Banks' accounts at BNY in aid of execution of a judgment the *Weinstein* plaintiffs obtained against Iran. BNY, faced with the conflicting claims to the accounts of the *Weinstein* plaintiffs, on one hand, and the Iranian Banks, on the other hand, initiated a proceeding in the United States District Court for the Eastern District of New York before Judge Wexler to determine the interests in said accounts (Docket No. Misc. 02-237).

14. Ultimately, by decision dated January 13, 2004, Judge Wexler found in favor of the Iranian Banks, determining that their accounts were not subject to execution by the *Weinstein* plaintiffs under TRIA. *See* 299 F. Supp. 2d 63. That decision was ultimately affirmed by the Second Circuit via dismissal of the *Weinstein* plaintiffs' appeal of same on February 4, 2005. The accounts had been restrained per order of Judge Wexler during the pendency of the *Weinstein* action and appeal.

15. On or about November 19, 2004, the *Rubin* plaintiffs served an Information Subpoena With Restraining Notice (the "Restraining Notice") upon BNY in aid of enforcement of their own judgment in *Rubin*. The Restraining Notice sought to restrain accounts maintained at BNY by the *Rubin* defendants and any "agent or

4

instrumentality" of Iran. These accounts are the very same accounts upon which the *Weinstein* plaintiffs sought to levy.

16. Upon the dismissal of the *Weinstein* appeal, BNY received a demand from Bank Melli, via its counsel, for the funds in Bank Melli's account at BNY. Upon receiving said demand, BNY checked its records and determined that the *Rubin* plaintiffs' Restraining Notice prevented BNY from disbursing such funds to Bank Melli.

17. Subsequent conversations by BNY's counsel with Bank Melli's counsel, and with the *Rubin* plaintiffs' counsel failed to result in any resolution as to the ownership of Bank Melli's accounts, with both Bank Melli and the *Rubin* plaintiffs continuing to maintain their respective claims to same.

18. On April 12, 2005, the *Rubin* plaintiffs caused the Marshal to serve the Execution on BNY.

19. BNY understands that Bank Sepah and Bank Saderat are similarly situated to Bank Melli with respect to their accounts and the *Rubin* plaintiffs' claims thereon.

20. BNY understands that the Iranian Banks will assert that their accounts at BNY are not subject to execution under TRIA, while the *Rubin* plaintiffs will contend that TRIA does indeed authorize execution thereon. BNY further understands that the Iranian Banks and the *Rubin* plaintiffs will dispute the correctness and/or applicability of Judge Wexler's decision in *Weinstein* to the facts at issue. Accordingly, BNY submits that the Court is clearly in the best position to resolve the dispute between the *Rubin* plaintiffs and the Iranian Banks.

The ARBIFT Wire

21. On or about September 10, 1992, BNY received a notice from the Office of Foreign Assets Control of the Department of the Treasury ("OFAC") that the Libyan

5

300173845v1

Foreign Bank would attempt to wire $4.78 million from ARBIFT to BNY for the benefit of BNY's account holder Bank Saderat-Dubai (the "ARBIFT Wire"), and OFAC ordered BNY to block the ARBIFT Wire pursuant to then existing Libyan Sanctions Regulations, 31 C.F.R. Part 550, issued under the International Emergency Economic Powers Act (50 U.S.C. § 1702).

22. BNY complied with the blocking order when it received the ARBIFT Wire that same day. Accordingly, the funds from the ARBIFT Wire never were credited to the account of Bank Saderat-Dubai, and instead were held in an interest bearing suspense account at BNY. The value of the proceeds of the ARBIFT Wire as of May 20, 2005 was $7,181,288.42.

23. In or about September 2004, the Libyan Sanctions Regulations were lifted, thereby resulting in the unblocking of the proceeds of the ARBIFT Wire.

24. It is unclear under the New York Uniform Commercial Code ("UCC") whether the proceeds of the ARBIFT Wire are the property of ARBIFT or Bank Saderat-Dubai. More specifically, under UCC § 4-A-209, electronic funds transfers destined for an account (Bank Saderat-Dubai's) on the books of a beneficiary bank (BNY) may be "deemed" accepted even if not credited to the relevant account, whereas incomplete funds transfers, under UCC § 4-A-211, are deemed cancelled after five days and returned to the originator (ARBIFT).

25. The interplay of the above-mentioned UCC provisions – in the case of wire transfers blocked and later unblocked pursuant to governmental sanctions regimes – is a wholly unsettled area under banking law and practice. Determination of the property interest is particularly important because: (i) if the proceeds of the ARBIFT Wire belong

to ARBIFT, then BNY can return same to ARBIFT, and there is no argument that the *Rubin* plaintiffs' Execution attaches thereto, but (ii) if the proceeds of the ARBIFT Wire belong to Bank Saderat-Dubai, then the Court will need to determine whether the *Rubin* plaintiffs' Execution reaches said proceeds under TRIA.

26. BNY understands that ARBIFT, the *Rubin* plaintiffs, and, potentially Bank Saderat-Dubai, may all assert claims to the proceeds of the ARBIFT Wire. Accordingly, BNY seeks to interplead same because the Court is clearly in the best position to determine the interests therein.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Interpleader pursuant to Fed. R. Civ. P. 22)

27. BNY repeats and realleges paragraphs 1 through 26 as if fully set forth herein.

28. BNY is a disinterested stakeholder of (i) the accounts of the Iranian Banks and (ii) the proceeds of the ARBIFT Wire (together, the "Funds").

29. BNY faces, or may face, conflicting claims by the defendants with respect to the Funds, thereby exposing BNY to multiple liability absent resolution of all such claims in one proceeding.

30. BNY is prepared to deposit the Funds into the registry of Court pending the Court's determination of the defendants' entitlements thereto.

WHEREFORE, BNY demands:

A. Under the First Cause of Action, a judgment authorizing and directing BNY to deposit the Funds into the registry of Court and discharging BNY from any and all liability to the defendants with respect to the Funds; and

B. Such other and further relief that the Court may deem just and equitable, including an award of BNY's costs and attorneys' fees incurred in prosecuting this action up to and including the time that this Court authorizes BNY to deposit the Funds into the registry of Court.

Dated:   New York, New York
         May 23, 2005

                                    PILLSBURY WINTHROP SHAW
                                    PITTMAN LLP

                                    By: _____
                                        Leo T. Crowley
                                        Daniel Z. Mollin
                                        1540 Broadway
                                        New York, New York 10036
                                        (212) 858-1000

                                    Attorneys for The Bank of New York